In re the MARRIAGE OF Raymond A. PRENAVO, Respondent and Cross-Appellant,

v.

Ann Lee PRENAVO, Petitioner and Appellant.

Nos. 38123, 38223.

Missouri Court of Appeals, St. Louis District, Division Four.

Sept. 13, 1977.

William E. Brand, Jr., St. Louis, for petitioner and appellant.

George D. Johnson, St. Louis, for respondent and cross-appellant.

ALDEN A. STOCKARD, Special Judge.

Both parties have appealed in this dissolution of marriage proceeding, but neither challenges that part of the decree granting dissolution. The wife contends that the trial court abused its discretion (a) in its division of marital property, (b) in awarding only $200 a month for child support, and (c) in making an inadequate award for attorney's fees. The husband contends that the

trial court erred in awarding any maintenance to the wife. We affirm.

The parties were married on May 3, 1952. Two children were born of the marriage; a girl who was age 18 and a boy who was age 12 at the time of the trial. Custody of the boy was awarded to the wife and she was awarded $200 a month for child support. The decree did not include an award of custody and child support for the girl, apparently on the theory she was emancipated. Both parties testified the marriage was irretrievably broken, and the court so found. All the property owned by the parties was accumulated during the marriage.

The court awarded to the husband the following marital property: A lot and cabin at Lake Ozark and a boat and trailer, the interest in a pension fund, some miscellaneous shares of stock, the surrender value of life insurance, a debt due from Jenkins Optical Co., the husband's share in a special rent account, and three bank accounts. According to the figures in the wife's brief the net value of this award totaled $32,346.04. The husband's brief does not specifically set forth the value.

The court awarded to the wife the family home (she lists the net value at $26,500; he lists it in his brief at $17,200 but in a "Financial Statement" filed with the trial court he listed the net value at $25,610.01), household furnishings (she lists the value at $2,500; he lists it at $1,390), an automobile which both valued at $1,500, and the husband's interest in a lot and building known as 18 Kirkham Industrial Drive in which is located the office of Jenkins Optical Company (she lists the net value at $22,032.27; he lists it at $10,657.58) with the right of the husband to re-purchase this last item of property within 6 years for $35,000, and providing that the rental from this property be applied "to the deed of trust" and "taxes and insurance on said property."[1] In addition, the court awarded the wife cash in the amount of $3,000. According to the wife's

figures the property awarded to her had a net value of $55,532.27, but according to the husband's figures the net value was $33,747.58 or $41,857.59 depending on the net value of the home.

The remaining item of marital property consists of the corporate stock of the Jenkins Optical Company (hereafter Jenkins). In 1962 Mr. Prenavo and Robert Mueller each advanced the sum of $10,000 and purchased all the corporate stock of that company. At the time of trial the only stockholders were Mr. Mueller and Mr. Prenavo, each owning 40 shares. Joseph M. Erger, the bookkeeper and accountant for Jenkins Optical Company testified that the "shareholder's equity" or the "net book value" as of June 1974, not including the real estate and building, was $232,019.20. However, both the husband and wife testified that the value of the stock in Jenkins owned by Mr. Prenavo was $104,644.74.

After the hearing, but before entry of the decree, the trial court directed that further evidence be taken "with respect to changed financial condition of the parties." It was developed that on April 2, 1975, an agreement was entered into between Mr. Prenavo, Mr. Mueller and Jenkins which, among other things, resulted in the following:

a) Mr. Mueller sold to the corporation for $180,000 his 40 shares of stock in Jenkins, $30,000 being paid in cash, and the balance being represented by a promissory note, secured by the pledge of the said 40 shares of stock, to be paid by the corporation over a period of five years with interest on the unpaid balance at 8%.

b) Jenkins bought for $20,000 cash all interest of Mr. Mueller in the building and the land known as 18 Kirkham Industrial Drive.

c) Mr. Prenavo agreed to pay the promissory note given by Jenkins to Mr. Mueller in the event Jenkins did not, and he pledged his 40 shares of stock as security.

---

1. The husband owned only a one-half interest in this lot. The bookkeeper of Jenkins Optical Company testified that the "cost" of the building exclusive of the lot was $40,099.43 and that the balance due on the "loan for the building" was $21,857.49. In view of these figures and the right of the husband to repurchase the one-half interest within six years for $35,000, we question whether the value submitted by either party is correct.

d) Until the promissory note is paid Mr. Prenavo is not to receive compensation of more than $25,000 a year from Jenkins, and no additional management personnel may be hired or salaries increased without the permission of Mr. Mueller.

The result of this transaction is that the 40 shares of stock previously owned by Mr. Mueller is to become treasury stock, and Mr. Prenavo will own all the outstanding shares of stock of Jenkins, but it is pledged to secure the payment of the note to Mr. Mueller. Also, Jenkins is now the owner of one-half interest in the building and lot of which the wife was awarded the other one-half interest. Neither party offered any evidence as to how this transaction would affect the value of Mr. Prenavo's interest in Jenkins. It could not have increased the value of his interest. Jenkins obtained the right to receive as treasury stock the 40 shares previously owned by Mr. Mueller, which the parties agreed had a value of $104,644.74 prior to the transaction, and in turn it paid or obligated itself to pay $180,-000. Without further explanation, this indicates a reduction of $75,355.26 in the total net book value.

We are not concerned with whether this was or was not a wise transaction from the standpoint of Mr. Prenavo. It is understandable that he might have been willing to pay or have the corporation pay, a premium price for Mr. Mueller's interest in Jenkins and in the lot and building in order to be the sole owner of Jenkins. Also the wife in no way challenges this transaction.

The trial court decreed that the wife should receive "$30,000 cash in lieu of [Mr. Prenavo's] marital interest in Jenkins Optical Company stock; this sum to be payable $10,000.00 on July 1, 1981, July 1, 1982 and July 1, 1983, with interest at the rate of 7% per annum, payable quarterly on unpaid balance, first quarterly interest payment to be paid on May 1, 1976." The record discloses good reasons why the trial court could have deemed it advisable not to award the wife shares of stock in Jenkins. ■ We review this case upon both the law and the evidence as in suits of an equitable nature giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Rule 73.01(3). This has been construed to mean that the decree of the trial court "will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ No finding of fact or conclusions of law were requested and none were made. In *Stark v. Stark*, 539 S.W.2d 779 (Mo.App. 1976), the court said the requirement of § 452.330, RSMo Supp.1974, that the court consider all relevant factors in making its allocation of marital property did not require a statement of the reason for its adjudication, but in some cases such a statement, whether requested or not, would be helpful to a reviewing court, and this is such a case. However, all fact issues are deemed found in accord with the result reached. *Smith v. Smith*, 552 S.W.2d 321 (Mo.App.1977).

■ The evidence of the value of the items of marital property varies substantially, but the figures submitted by the wife in her brief to this court indicate that the marital property awarded to her, other than cash in lieu of stock in Jenkins, had a value of $32,346.04 more than that awarded to the husband. Figures submitted by the husband indicate it could have been substantially less. On the record before us we cannot arrive at a precise determination of value, and we do not know upon what estimates of value the trial court relied. When we consider separately the value of the interest of the husband in Jenkins as affected by the transaction by which Jenkins is to acquire as treasury stock the 40 shares owned by Mr. Mueller, we find that the transaction resulted in a substantial decrease in the "net book value" of Mr. Prenavo's interest, but we do not know exactly how much. Assuming that it was one-half of the excess of the price over the agreed value, the reduction would be more than

$37,500, and would reduce the value of Mr. Prenavo's interest by that amount. When we consider that the division of the marital property other than the stock in Jenkins resulted in the wife receiving substantially more than the husband, and the possible realization of $35,000 from the building and lot as compared to the $22,000 value placed on it by the wife, and the $30,000 to be received with interest in lieu of the Jenkins stock, the division of marital property, while not precisely equal, does not appear to be unreasonably disproportionate. Section 452.330 does not require an equal division but only that it be a just division. *Seiner v. Seiner*, 552 S.W.2d 54 (Mo.App. 1977). We cannot say as a matter of law the division of marital property was unjust, or that it is without support in the evidence, or that it is against the weight of the evidence. Nor can we say as a matter of law, as contended by the wife, that the trial court abused its discretion.

The wife next asserts that the trial court abused its discretion in awarding only $200 a month for the support of her son who was age 12 at the time of trial, and in awarding attorney's fees only in the amount of $3,500.

■ The determination of the proper amount to be paid by a father to fulfill his obligation to support his children requires a balancing between the needs of the child and the ability of the father to pay. *In re Marriage of Englehardt*, 552 S.W.2d 356 (Mo.App.1977). The trial court had before it the evidence of the temporary limitation on the salary of the father, and the obligation on his part to pay to the wife maintenance in the amount of $600 a month and interest on the $30,000 cash allowance in the amount of $175 a month. Under all of the circumstances, and within the scope of our review, we cannot say that as a matter of law the trial court abused its discretion in awarding child support in the amount it did. Of course, upon application a judgment for child support can be modified upon proof of a change of conditions *In re Marriage of Cook*, 532 S.W.2d 833 (Mo.App. 1975).

■ The trial court decreed that Mr. Prenavo was "to pay [the wife's] attorneys * * * $3,500 additional, * * *." This clearly implies to us that some previous award for attorney fees was made, but neither party refers to any such award in the argument under this point. Our gratuitous perusal of a certified copy of the file of the Circuit Court, which is not a part of the transcript but which has been deposited with this court, confirms our suspicion as to the reason for the use of the word "additional" in the judgment. On September 10, 1974 the trial court made an award to the wife of "$350.00 as and for attorney's fees on account." We do not know how many other awards, if any, were made.

It would be inappropriate, and we decline, to attempt to rule on whether the trial court abused its discretion in making a partial award for attorney fees when we do not know the total amount awarded.

■ We turn now to the contention of the husband that the trial court erred in awarding any maintenance to the wife because (a) she was awarded sufficient marital assets to enable her to be self-supporting, and (b) she not only failed to prove that she was not able to support herself by appropriate employment, but she refused to seek employment.

The authority to award maintenance is set forth in § 452.335, where it provided that "The court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home."

We note that the husband does not challenge the amount of the maintenance order in the event that an order for some maintenance was authorized, and although he has a limit on his income from Jenkins he does

not contend he is financially unable to pay the amount of maintenance decreed by the trial court.

He itemizes the marital property awarded to the wife, presumably to demonstrate that she does not lack sufficient property to provide for her reasonable needs. He lists the family house and furniture and shows a net value of $18,590, but the deed of trust on the house is in excess of $10,000, and the wife is obligated to make the payments. The house is not income producing property. The wife has a mortgage expense to pay in addition to maintenance, insurance and taxes. He also lists the building and lot known as 18 Kirkham Industrial Drive and shows an equity of $10,657.58. The wife has only a one-half interest in the property, and until a substantial deed of trust is retired she receives little or no income from this property. In addition, for six years it is encumbered with the right of the husband to repurchase it and is not subject to sale by her. The next item listed is a 1971 Ford automobile. It constitutes an expense; it does not produce income. The last item is "cash award, plus interest at 7% per annum, payable quarterly $30,-000." It is only the interest, not the principal, that is payable quarterly. No part of the $30,000 is to be paid until 1981.

It thus appears that from the property awarded to the wife she has practically no income except the item of interest. There is no contention that she has any other income. It is true that she received $3,000 cash award but her testimony would justify the conclusion that accrued obligations used all or most of that award.

We need not itemize the expenses testified to by the wife for herself and the children, but they totaled over $1,200 a month. Therefore, a finding that the wife does not have sufficient property to provide for her needs is not without support in the evidence, nor is it against the weight of the evidence.

The husband next relies on certain testimony of the wife concerning her attempt to obtain employment as demonstrating that she "refuses to work." The trial court did not draw that conclusion from the testimony and neither do we. In substance she testified that her previous employment was bookkeeping and that she would need to go back to school to "brush up," but at the time she could not afford to do so. She also stated that she was limited in possible work because her son was 12 years old and she preferred to be home when he returned from school rather than have him running the streets.

We find nothing unreasonable or arbitrary on the part of the wife in placing the welfare of her son above the possible financial burden on the boy's father to provide maintenance. Also it is not reasonable to expect a woman who has not worked outside the home for over fifteen years to be able to step into employment without some preparation. The husband relies primarily on *In re the Marriage of Neubern*, 535 S.W.2d 499 (Mo.App.1976). We find that case not to be comparable on its facts, and not to support the husband's claim.

There was evidence to support the trial court's conclusion on each of the issues here raised, including the issue of attorney fees which we decline to review. Our review of the evidence produces "no firm belief that the decree or judgment is wrong." *Murphy v. Carron*, supra, 536 S.W.2d at page 32.

The judgment is affirmed.

SIMEONE, C. J., and NORWIN D. HOUSER, Special Judge, concur.