**Floyd McCALL, Appellant,**

v.

**Helen McCALL, Respondent.**

**No. KCD 29699.**

Missouri Court of Appeals,
Kansas City District.

Nov. 27, 1978.

Larry L. Zahnd, Glen A. Dietrich, Zahnd & Dietrich, Maryville, for appellant.

Tom McBride, Tarkio, for respondent.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

SWOFFORD, Chief Judge.

Appellant (Floyd) and respondent (Helen) were married February 25, 1955, and were separated on December 17, 1976. No children were born of the marriage. Floyd filed a petition for dissolution on December 26, 1976 asking that the marriage be dissolved and the marital property be divided. On December 29, 1976, Helen filed her entry of appearance and answer. In her answer, she admitted the allegations of Floyd's petition and joined in his request that the marriage be dissolved and that the marital property be divided. At the time of the trial, June 20, 1977, the parties both testified that the marriage was irretrievably broken. On that date, Floyd was 72 and Helen was 68 years of age.

The element of fault or misconduct of either party prior to the separation assumes no decisive prominence on this record, although Floyd raises a point on appeal charging financial misconduct of Helen, as hereafter discussed. On the other hand, the record reveals that the parties led a normal, hard-working farm life on a 40-acre tract, owned by Floyd before the marriage, and other rental land near Fairfax, Missouri during the 22 years of their marriage. The record supports a finding that each contributed to the operation of the farm and the accumulation of marital property in a manner and by joint and individual efforts consistent with this economic and occupational situation.

At the time of the marriage, Floyd was actively engaged in farming and owned the usual farm equipment and a car and a truck. Most of this equipment had been replaced, of course, over the years of the marriage. In addition to the farm, he also owned two residential rental properties in Hamburg, Iowa, and Helen owned one residential rental property in Fairfax, Missouri. At the time of the separation, the parties had accumulated checking accounts, a savings certificate in a Co-op representing proceeds from sales of crops, certificates of deposit, unsold crops, farm equipment, livestock, household furniture and other personalty in the approximate amount of $90,000.00. No evidence was offered by either party as to the market value of the non-marital real estate. There was no substantial dispute, however, as to the value of the marital properties.

Floyd had filed with the court on March 17, 1977 a Schedule of Marital and Non-Marital Property with an evaluation of all items (except the non-marital real estate) and those evaluations were accepted by the parties and the court below with one slight exception as to the livestock on the farm. Floyd had listed those animals at a value of $2,850.00 but at the trial he reduced his evaluation by $600.00 and Helen testified that in her opinion they were worth more than shown upon the schedule. The court accepted the figure as shown on the schedule.

There was evidence that during the marriage, Helen maintained a separate bank account in which she deposited rentals from the residence she owned in Fairfax and her social security checks, and that at least part

of these funds were used to purchase certificates of deposit in her name and that of her husband as owners, and to purchase supplies for the farm. The rentals from Floyd's Iowa properties were apparently used for similar purposes.

At the time of the domestic breakdown and separation, Helen, on the advice of her attorney, transferred the registration on some of the certificates of deposit to her daughter as joint owner; deposited others still registered in her name and her husband's in her safe deposit box; withdrew the funds from the joint checking accounts; and generally took over control of the liquid assets. After Floyd filed the suit for dissolution but before the decree, Helen bought a residence in Fairfax for $12,250.00 from these marital funds and took title thereto in her own name.

At the trial, Helen, after testifying about the purchase of this property, further testified, in direct examination, as follows:

"Q. So this house then is joint property, is that not correct?

A. Yes.

    *     *     *     *     *     *

Q. And you would consider that to be marital property?

A. Yes."

In the decree of dissolution and distribution the court set over to Floyd, as his separate property, the 40-acre farm and the two rental properties in Hamburg, Iowa, and the rental property in Fairfax to Helen, as her separate property, as non-marital properties. The decree divided the marital properties as follows:

*To Floyd :*

Farm machinery, including motor vehicles; crops on the farm; livestock; proceeds from sale of 23 hogs; one checking account containing proceeds from sale of hogs; and certificates of deposit in Farmers and Valley Bank—all totalling $49,341.56.

*To Helen :*

Checking account, First National Bank of Tarkio; checking account, Farmers and Valley Bank; Atchison County Co-op Savings Certificate; certificate of deposit in Farmers and Valley Bank; and certificate of deposit in First National Bank of Tarkio—all totalling $40,366.37.

Floyd, the appellant, raises five points of error on appeal.

His first point is an abstract statement of law, accepted by this Court, as to the scope of review on this appeal under Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30, 32[2] (Mo. banc 1976). This point, however, violates Rule 84.04(d) and presents nothing for review.

Point II relied upon by Floyd will be hereafter discussed.

■ Point III raises the claim that the court erred in finding that there was no misconduct on the part of Helen in that she was admittedly guilty of misconduct in transferring marital funds to her own account before the decree.

It is undoubtedly true that Section 452.330(4), RSMo., Laws 1973, empowers the court to consider the conduct of the parties as affecting the division of marital property, and that this includes financial as well as marital misconduct. *Smith v. Smith*, 552 S.W.2d 321, 322–323[2] (Mo.App.1977); *Conrad v. Bowers*, 533 S.W.2d 614, 620[6] (Mo. App.1975). In the case at bar, Helen freely admitted that she deleted Floyd's name from certain certificates of deposit, took possession of other jointly owned certificates and a savings certificate, and transferred funds in joint checking accounts to her own account. She stated that she did this on the advice of her attorney because of a matter unrelated to the dissolution proceeding, and she made no attempt at any time either to hide this fact or to deplete such funds, except the investment in the residence at Fairfax, after this suit was filed. In the latter regard, she freely recognized that this residence, purchased with marital funds, remained marital property. No challenge was leveled at her testimony in this regard and the trial court could reasonably find that this did not constitute marital misconduct under the statute. Point III is without merit.

Point IV charges the trial court with error in the evaluation of the livestock set over to Floyd. The court evaluated these items of personalty at $2,850.00, the figure used by Floyd in the formal schedule of property filed in this cause. At the trial (and here), Floyd places a value on the livestock of $2,250.00, and Helen at the trial stated that the figure should be higher than $2,850.00. The trial court cannot be charged with error for using a value figure supplied by Floyd in a formal evaluation of these items filed in this cause. This latter statement, that such figure was too high by $600.00, without further convincing evidence of the reason for the purported diminution in value, is not convincing. Point IV is without merit.

Point V charges that the court's division of the marital property was against the weight of the evidence, was unjust and misapplied the law. It is conceded in appellant's brief that Section 452.330 RSMo., Laws 1973, does not require an equal division of the marital property but only a just division. *In re Marriage of Prenavo*, 556 S.W.2d 463, 466[8] (Mo.App.1977); *In re Marriage of Cornell*, 550 S.W.2d 823, 826[2] (Mo.App.1977); and that the trial court has broad discretion in this regard, *Klinge v. Klinge*, 554 S.W.2d 474, 477[3] (Mo.App. 1977).

The record has been carefully reviewed and each of the relevant factors as set out in the statute, considered in the light of this record. The conclusion is reached that the division of property in the decree was supported by substantial evidence, which may be summarized as follows:

*Contribution of Helen.* The statute requires that the court consider the contribution of the wife as a homemaker and mother. Although no children were born of the marriage and there was evidence that Helen was not in perfect health, following an automobile accident, she testified that she did housework, raised a garden, canned and helped some with the farm work. Moreover, there is evidence that she expended some of her separate income in the farm operation.

*Value of property set apart to each spouse.* There is no evidence regarding the value of the non-marital property set apart to each spouse. Floyd, as above stated, had separate property consisting of residences in Iowa and the 40-acre farm, and Helen had the residence in Fairfax, which the evidence showed was in a rundown and poor condition.

*The economic circumstances of each spouse.* Helen testified that prior to trial, she received income from her rental property, when it is occupied, of $40.00 per month, and social security of $103.20 per month. She set her needs at $300.00 for living expenses per month. She was 68 years of age at the time of trial and unable to work due to her health. There was no evidence as to the amount of rental received by Floyd from the two Iowa properties, although it must be assumed that he derives some income from that source and apparently he was still farming at the time of the decree, although on a somewhat limited scale.

*Conduct of parties.* This factor has been previously considered in relation to Point III, and the trial court was justified in finding (as it did) no improper conduct on the part of either party.

Under this Point, Floyd argues that it was error for the court to include as a part of the division of property to him the proceeds from the sale of hogs, since those funds were used by him prior to trial in the operation of the farm. There is no specific evidence as to the amount so used, the purpose of such use, whether such use was for permanent improvements or income-producing uses or the balance of such funds on hand. The logic of this argument is elusive because whatever the uses, they could only inure to his benefit, not to Helen's. He further argues that the court erred in failing to consider the appellant's contribution to the original farm machinery, presumably that machinery owned by him at the time of the marriage. The court properly considered the replacement machinery owned and in use 22 years thereafter as marital property under *Jaeger v. Jaeger*, 547 S.W.2d 207, 208[5] (Mo.App.1977).

That argument is rejected. There is no merit to Point V.

The final point for determination of this appeal (considered here out of chronological order) is Point II, wherein the court is charged with error in failing to find that the house purchased by Helen after the filing of this action with marital funds in the amount of $12,250.00 was itself marital property, and in failing to order a division thereof. Such property was not specifically covered by the decree. This point at first blush and on the surface would seem to have merit, but upon a close scrutiny of the record and the actual results of the court's decree, the conclusion is inevitable that this lack in the decree is not reversible error nor does it affect the jurisdiction of this Court.

First, it should be noted that the record lacks such precise evidence or clear exposition "facilitating a clear and easily discernible picture of the nature and value of the marital property involved" nor of the exact and specific source of the funds used by Helen to purchase the residence. To the contrary, the record emerges in such a state as to require the trial court and this Court "to sift through an array of evidence, presented in most instances in a piecemeal and imprecise fashion" to resolve this problem. This is a burden which should not be imposed but which, perforce, must be assumed. *In re Marriage of Simpelo*, 542 S.W.2d 558, 561[7, 8] (Mo.App.1976).

By way of preliminary clarification, this Court recognizes the mandate of Section 452.330, that the trial court "shall" decree a division of all marital property as so definitely and logically discussed in *L.F.H. v. R.L.H.*, 543 S.W.2d 520, 522[5] (Mo.App. 1976); *Corder v. Corder*, 546 S.W.2d 798, 804[6] (Mo.App.1977); *In re Marriage of Bradford*, 557 S.W.2d 720, 730[19] (Mo.App. 1977); *Anspach v. Anspach*, 557 S.W.2d 3, 5–6[1, 2] (Mo.App.1977), and other decisions since the adoption of the dissolution of marriage act. This decision is not to be construed as either a criticism of the purpose of such statute or as a disagreement with those opinions.

The decree herein divided the marital property upon the approximate basis of 45% ($40,366.11) to Helen, and 55% ($49,341.56) to Floyd. All of the property awarded to Helen was in the nature of liquid assets consisting of bank checking accounts, savings certificate, and bank certificates of deposit. All of these were jointly owned and registered by and in the names of the parties prior to the separation and ensuing litigation. Recalling the unchallenged testimony of Helen, that she asserted dominion over all such property at the time of separation and that prior to the decree she expended $12,250.00 of such funds to purchase the residence in Fairfax which she considered marital property, it is clear what the court below did by the decree to adjust the equities of the parties. The only source available to Helen with which to purchase this property were the liquid assets consisting of marital property accumulated during the marriage. It can be gleaned from the record (although by no means clearly established) and from the firm declarations in respondent Helen's brief that the source of these funds was the Co-op savings certificate and the checking accounts at the First National Bank of Tarkio and at the Farmers and Valley Bank. These items of marital property were set over to Helen in the decree of distribution. If such was not the source of the purchase price of the property, the remaining items of marital property consisting of certificates of deposit on which Helen had Floyd's name as joint owner removed could have been partially used to finance the purchase. These items were also set over to Helen in the decree of distribution. Regardless of the exact part of the funds, the *only source* were the items of liquid personalty eventually set over to Helen in the decree. The evidence absolutely fails to show any other source available to her to raise the purchase money of $12,250.00.

The conclusion is inevitable that the separate marital property decreed to Helen had been expended to the extent of the purchase price of the residence before the decree was entered. The court therefore awarded her assets which she had already

converted into real estate, the title to which was taken solely in her name and which remained in that status at the time of the decree, and presumably is still so held. There was no need to divide the real estate in the decree under these circumstances. The division of the marital property was complete and total. The court's decree of division was supported by the evidence and no abuse of discretion appears.

The judgment is affirmed.

All concur.