Mary Lou STAMME, Respondent,

v.

Kenneth Gallet STAMME, Appellant.

No. 39099.

Missouri Court of Appeals, Eastern District, Division Four.

Sept. 25, 1979.

Latourette & Weyerich, Donald J. Weyerich, Clayton, for appellant.

Morris A. Shenker, Cordell Siegel, St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

The husband has appealed in this dissolution of marriage case, and he contends error on the part of the trial court in three respects: (1) The exclusion of evidence; (2) the division of the marital property; and (3) the award of custody of the minor children. We affirm.

During cross-examination of respondent, appellant unsuccessfully sought to introduce in evidence tape recordings secretly made by him of telephone conversations between respondent and other persons which occurred after the parties had separated and after this action for dissolution of marriage had been filed.

Respondent contends, and this apparently was the basis for the ruling by the trial court, that the recorded telephone conversations were inadmissible in evidence by reason of Title III, entitled "Wiretapping and Electronic Surveillance," of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. It is there provided, with certain exceptions not applicable to this case, that any person who "willfully intercepts * * * any wire or oral communication" or who "willfully uses * * * the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the [illegal] interception of a wire or oral communication" shall be guilty of an offense punishable by fine or imprisonment. Section 2515 provides as follows:

"Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter."

■ Relying primarily on *Simpson v. Simpson*, 490 F.2d 803 (5th Cir. 1974), appel-

lant asserts that Title III of the Omnibus Crime Control and Safe Streets Act of 1968 was not intended to prohibit purely interspousal wiretaps on telephones in the marital home. The *Simpson* case was a civil suit brought pursuant to 18 U.S.C. § 2520[1] by a woman against her former husband who had during the marriage attached a recording device to the telephone lines at their home and used the recorded conversations, described in the *Simpson* case as "mildly compromising," to obtain an uncontested divorce. Although the court admitted that the "naked language" of Title III was all-inclusive, it concluded that Congress did not intend to intrude into domestic conflicts normally left to state law. It also stated that it was "not without doubts" about its decision, but that the section was not "sufficiently definite and specific to create a federal cause of action for the redress of [the wife's] grievances against her former husband." We are not here concerned with a tort action by one spouse against another.

We consider the language of Title III to be clear and unambiguous. As stated in *United States v. Giordano*, 416 U.S. 505, 514, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974), the "purpose of the legislation, * * * was effectively to prohibit * * * all interceptions of oral and wire communications, except those specifically provided for in the Act * * *," and interspousal wiretaps placed on telephones in the marital home or the home of either spouse are not specifically exempted.

The court in the *Simpson* case arrived at its result after examining the legislative history, but that result has been the subject of extensive criticism by legal writers. See 12 Valpariso University Law Review 537 (1978), "Interspousal Electronic Surveillance and Title III;" 27 Buffalo Law Review 155 (1977), where in a Note it was stated that "An exemption for marital disputes is suggested neither by the wording

nor the legislative history of Title III;" 12 Creighton Law Review 1209 (1979), "Title III and the Classic Triangle: Should the Immunity Doctrine Apply to Interspousal Electronic Surveillance?" The *Simpson* court based its decision, at least in part, on a desire to avoid a conflict between the civil remedies granted by Title III and the doctrine of interspousal immunity from civil actions in tort recognized in some states, and it concluded that Congress did not intend to override that doctrine.

In *United States v. Jones*, 542 F.2d 661 (1976), the 6th Circuit Court of Appeals took sharp issue with the reasoning and result of *Simpson v. Simpson*. The *Jones* case was a criminal proceeding brought against a husband who had intercepted telephone conversations of his estranged wife and had used the intercepted communications in violation of 18 U.S.C. § 2511(1)(a) and (d). The court stated that "The language of § 2511(1)(a) quite clearly expresses a blanket prohibition on all electronic surveillance except under circumstances specifically enumerated in the statute," and an interspousal wiretap is not one of the exceptions. The court further stated that ordinarily a court does not refer to the legislative history when construing a statute which is clear on its face, but that it would do so because it disagreed with the construction of the statute in the *Simpson* case. It then reviewed at length the legislative history and concluded: "Our review of the legislative history of [§ 2511(1)], testimony at congressional hearings, and debates on the floor of Congress, inescapably lead to the conclusion the 18 U.S.C. § 2511(1)(a) establishes a broad prohibition on all private electronic surveillance and that a principal area of congressional concern was electronic surveillance for the purpose of marital litigation," and that "the Congress enacted Title III to protect the privacy of all persons conversing over the telephone

1. "Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communica-

tions, and (2) shall be entitled to recover from such person—(a) actual damages * * *; (b) punitive damages; and (c) a reasonable attorney's fee and other litigation costs reasonably incurred."

and that their privacy is shielded from invasion by third parties and spouses alike." The court further stated that "If Congress intended to create another exception to Title III's blanket prohibition of unauthorized wiretaps [it] would have included a specific exception for interspousal wiretaps in the statute." We shall not here review the legislative history. It is sufficient to state that it is set out in detail in *United States v. Jones,* supra, and that we agree with the conclusion reached in that case. We consider the statute to be clear and unambiguous in its blanket prohibition of all wiretaps not specifically authorized; that interspousal wiretaps are not specifically authorized; and that the legislative history as set forth in *United States v. Jones, supra* is in complete accord with these conclusions.

Having determined that § 2511(1) applies to interspousal wiretaps, the provisions of § 2515 prohibit the admission in evidence of the intercepted communications, and the trial court properly sustained respondent's motion to suppress the recordings.

█ Appellant's second point is as follows: "The trial court erred in awarding respondent more than three-fourths of the marital property." This point does not meet the minimum requirements of Rule 84.04(d), in that it does not state "wherein and why" the ruling of the trial court is claimed to be erroneous. See *Cavaness v. Armstrong,* 525 S.W.2d 446 (Mo.App.1975); *Cato v. Modglin,* 545 S.W.2d 307 (Mo.App. 1976). However, in an extremely liberal exercise of judicial discretion[2] we have studied appellant's argument in an effort to determine his precise contentions.

█ Appellant admits that § 452.330 RSMo 1978 grants to the trial court "great flexibility and far-reaching power when dividing marital property in order to accommodate the needs of the parties upon dissolution of the marriage," citing *In re Marriage of Heddy,* 535 S.W.2d 276, 281 (Mo.

App.1976), and that a division of the marital property will not be disturbed on appeal "except for an abuse of discretion." *Murray v. Murray,* 538 S.W.2d 587 (Mo.App. 1976). We add that the trial court is not required to make an equal division of the marital property, *Reed v. Reed,* 516 S.W.2d 568 (Mo.App.1974); *Smith v. Smith,* 552 S.W.2d 321 (Mo.App.1977), but only a just division. *McCall v. McCall,* 574 S.W.2d 496 (Mo.App.1978).

█ The trial court did not make findings of fact and conclusions of law; no request therefor being made. Although such findings are usually helpful on appellate review, they are not required by Rule 73.01(2) in the absence of a request. *Stark v. Stark,* 539 S.W.2d 779 (Mo.App.1976). In the situation we have here all fact issues are deemed to have been found in accordance with the result reached. *Smith v. Smith,* supra; *Prenavo v. Prenavo,* 556 S.W.2d 463 (Mo.App.1977).

█ The court did not award maintenance to either spouse, but it did award child support to the wife in the amount of $22.50 per week for each of the two minor children. During a substantial period of the marriage respondent worked outside the home. At the time of trial she was employed and her gross earnings were approximately $147 a week. Appellant's gross earnings were approximately $193 a week, and he also received some additional benefits. Appellant's argument seems to be that it was an abuse of discretion to award respondent 84% of the marital property and only 16% to him. To arrive at those figures appellant did not take into consideration that the family home had a mortgage on it of $10,000 or $11,000, and in arriving at his result he used the estimates of value favorable to his contention. In respondent's brief she sets out the evidence as to the value of the marital property which was as follows:

[See following illustration.]

---

**2.** Appellant's brief was filed prior to the date *Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978) was handed down.

| PROPERTY | WIFE'S VALUE | HUSBAND'S VALUE | HIGHEST VALUE | LOWEST VALUE |
|---|---|---|---|---|
| To Wife: | | | | |
| Real Estate after Mortgage | $6,000.00 | $11,000.00 | $11,000.00 | $6,000.00 |
| 1972 Vega | 900.00 | 1,300.00 | 1,300.00 | 900.00 |
| Personalty in Petitioner's Possession | Unknown | Unknown | Unknown | Unknown |
| TOTAL | $6,900.00 | $12,300.00 | $12,300.00 | $6,900.00 |

| PROPERTY | WIFE'S VALUE | HUSBAND'S VALUE | HIGHEST VALUE | LOWEST VALUE |
|---|---|---|---|---|
| To Husband: | | | | |
| Money Market Management | $1,600.00 | $ 400.00 | $1,600.00 | $ 400.00 |
| Oppenheimer Income Fund | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 |
| Federal and State Refund Checks for 1974 Income Tax | 600.00 | 600.00 | 600.00 | 600.00 |
| El Camino Truck | 800.00 | 100.00 | 800.00 | 100.00 |
| Van Truck | 200.00 | 200.00 | 200.00 | 200.00 |
| Other Personalty | Unknown | Unknown | Unknown | Unknown |
| TOTAL | $5,200.00 | $3,300.00 | $5,200.00 | $3,300.00 |

We do not know what values the trial court accepted, but it is readily apparent that the distribution was not so disproportionate as to establish an abuse of discretion on that basis. Also, the house is the principle item in the marital property, and it is non-income producing but is needed by the spouse which is awarded custody of the children.

When we consider all the relevant factors set forth in § 452.330 RSMo 1978, including the desirability of awarding the family home to the spouse who has custody of the minor children, we cannot hold that the trial court abused its discretion in making the division it did.

■ Appellant's third point also is inadequate. In its entirety it is: "The trial court erred in awarding respondent custody of the children born of the marriage." We review this contention only because the welfare of minor children is involved.

Appellant argues that "the Court failed to consider all the circumstances involved in ascertaining to which parent custody would be in the best interest of the children." He then asserts that the court erred in suppressing the taped telephone conversations and that the "conduct of Respondent as evidenced by [those] telephone conversations would have been an appropriate consideration of the Trial Court * * *." That evidence is not a part of the record before us, and we have ruled that it properly is not.

■ We have studied the entire record that bears on the issue of proper custody. The children were below school age at the

time of trial. There was evidence from disinterested persons that respondent was a good mother for the children, and the deputy juvenile officer after an investigation recommended that respondent be granted permanent custody with appellant having temporary custody. There was also evidence to the effect that to place permanent custody with appellant would not be in the best interest of the children. We are convinced that the trial court entered the proper order as to custody.

The judgment is affirmed.

DOWD, P. J., and CRIST, J., concur.