Peter SARANDOS, Appellant,

v.

Blanche Antoinette SARANDOS, Respondent.

No. 43653.

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 30, 1982.

---

London, Greenberg & Fleming by Burton M. Greenberg, St. Louis, for appellant.

Summers, Compton, Wells & Hamburg by Robert F. Summers, Clayton, for respondent.

SATZ, Judge.

In this cause, the husband appeals from a decree of dissolution. The trial court dissolved the marriage, awarded custody of the parties' thirteen year old son to the wife, and awarded the wife $500 per month in child support. Further, the trial court awarded the wife $1,500 per month maintenance and divided the marital property. The husband appeals from the award of maintenance and the division of marital property. We affirm in part and reverse and remand in part.

The parties were married in 1955. They had three children. Only the youngest, a thirteen year old boy, was not emancipated at the time of trial. The husband admitted to a succession of extramarital affairs with various women during the course of the marriage. These affairs commenced within a year of the parties' marriage and took place without the wife's knowledge. In the latter years of the marriage, the husband admitted to the affairs and attempted to reconcile differences which arose with his wife. The attempts at reconciliation failed, the parties separated and this action for dissolution was initiated.

On appeal, the husband attacks the division of marital property arguing that it is not "just" as required by the dissolution statute § 452.330.1. He also attacks the award of maintenance on three separate grounds. The husband argues that maintenance was improperly awarded because (1) the wife can obtain employment to meet her reasonable needs (2) the wife possesses enough property from the division of marital property to comply with her needs and (3) the husband does not have enough spendable income to meet the total obligations of the decree. We find the division of marital property was within the court's discretion and find the husband's first two attacks on the maintenance award are without merit. However, the record does not disclose whether the husband has sufficient spendable income to satisfy the decree. We remand for a determination of this issue.

On this remand, we address and, hopefully, lay to rest the attack made by the husband on the court's division of marital property. The husband argues that the division of marital property is so disproportionately weighted in favor of the wife that it is not a "just" division as required by the dissolution statute. § 452.330.1. Our response to this argument is complicated by the fact the trial court neglected to value a major asset of marital property. This asset was awarded to the husband and consists of stock held in two closely-held corporations: Pete's Market Inc. and P & S Foods, Inc. The husband operates these two corpora-

tions and draws salaries from each corporation of approximately $50,000 to $60,000 per year. His after-tax income in recent years has averaged about $78,000 per year. The husband, however, claims that he must lend back to one of the two corporations, P & S Foods, his entire net salary from that corporation after paying taxes on the gross amount. The husband claims it is necessary to lend this money back, because the corporation is under-capitalized and needs the money for working capital. At the time of trial, the husband's "loans" to P & S Foods were not repaid and amounted to $128,710. The husband's expert witness testified that the two corporations had a book value of $152,272, or $280,982 if the $128,710 in loans of the husband to P & S Foods were treated as paid-in-surplus (equity). The wife's expert valued the corporations at $405,000 based upon a capitalization of income method of evaluation.

We have set out the division of marital property in two different schedules, which vary as to the value the trial court may have placed on the stock of the closely-held corporations. (See Schedules I and II).[1] If the corporate stock were valued at $400,000 (Schedule II) the value of the husband's portion of the marital assets would be $283,955. Compared to the value of the wife's portion, $424,550, the split would be 40% for the husband and 60% for the wife. If, however, the court considered the husband's loans to P & S Foods as paid-in-surplus (equity) and valued the corporate stock at book value, the value of the corporate stock would approximate $300,000, and the husband's share of the marital assets would equal $183,955. (See Schedule I). When this amount is compared to the wife's share

of $424,550, the division of the marital assets is 70% for the wife and 30% for the husband.

The record does not indicate what percentage distribution was intended by the trial court.[2] In its decree, however, the trial court specifically noted it "considered marital conduct in the division of the ... marital property." With our scope of review limited by the standards of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), we believe that if the court accepted the $400,000 valuation and intended a 60–40 split, this was justified by the husband's proven misconduct. *Givens v. Givens*, 599 S.W.2d 204, 205–206 (Mo.App.1980). We find a 70–30 split, created if the court adopted a $300,000 valuation, to be heavily weighted in the wife's favor. Such a split, however, is supported by precedent, *see Arp v. Arp*, 572 S.W.2d 232, 235 (Mo.App.1978) and we cannot say it is a clear abuse of discretion. In *Arp*, the Western District upheld a 72–28 division of marital property based on the husband's misconduct. Although smaller amounts were involved, in that case as here, the husband was awarded all the income producing property. Noting that "[t]he trial court is vested with broad discretion in the division of marital property" *id.* at 234, we will not overturn this portion of the decree.

The husband next argues that maintenance was improperly awarded because the wife can obtain employment to meet her reasonable needs. Section 452.335.1 RSMo 1978 provides that the trial court can award maintenance "only if it finds that the spouse seeking maintenance ... (2) is unable to support himself through appropri-

1. The values listed on these schedules were taken from the record. For the most part, they are values either agreed to by the parties or values placed on the listed items by the husband and not contested by the wife. Whether the court chose to believe the husband's valuations does not appear on the record.

2. After the trial court had denied the husband's Motion to Amend the Decree, or, in the alternative, Motion for a New Trial, the husband filed a Motion for Reconsideration in which the husband stated the court had told respective coun-

sel at the hearing on the first motion "that he accepted neither parties' valuation of the stock in the two closely-held corporations, but valued said stock at $300,000.00" and that the distribution of marital assets was meant to be 55% for the wife and 45% for the husband. As apparently understood by the court, it is questionable whether the court had jurisdiction to entertain the second motion, and, in any event, the statements attributed to the court are not properly part of the present record.

ate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home." The trial court has discretion in applying the provisions of § 452.335 RSMo 1978. *In re Marriage of Powers,* 527 S.W.2d 949, 954 (Mo.App.1975).

■ In the present case, the wife was 47 years old, had worked as a bookkeeper for 4 months when she was 18 and for the next five years had worked as a receptionist and in the mail room. Since she was 23, she has devoted her time to raising her three sons. She was awarded custody of the youngest son, a 13 year old boy. She was always at home raising the two older boys, who turned out well. She desired to continue to give the youngest son the same nurture and caring. Given the wife's limited experience and her desire to stay home and raise her son, "[w]e find nothing unreasonable or arbitrary on the part of the wife in placing the welfare of her son above the possible financial burden on the boy's father to provide maintenance." *In re Marriage of Prenavo,* 556 S.W.2d 463, 467 (Mo.App.1977).

The husband also argues the trial court erred in awarding maintenance to the wife because she possessed sufficient property to provide for her needs. § 452.335.1 provides:

"In a proceeding for ... dissolution of marriage ... the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs."

Without the maintenance award, the wife does not receive sufficient property to provide for her reasonable needs.

The wife's reasonable needs, as shown by her income and expense statement submitted at trial, were $1,810 per month. In

addition, the court awarded the wife insurance policies having a cash surrender value of $16,500 but urged the wife to keep those policies in force for the benefit of the children. The premiums on those policies came to $460 per month. Adding this to the wife's expenses results in her having $2,270 per month in expenses, or $27,240 per year.

Based upon the decree, the wife's income would come from three basic sources: (1) the possible investment of the income producing property she received as her part of the distribution of marital property; (2) the payment of her $150,000 judgment at 9% interest amortized monthly, in installments of $1,250 per month and (3) $1,500 per month as maintenance.

■ In the distribution of marital property, the wife was awarded income producing property worth approximately $80,000.[3] Invested at 10%, the return on investment suggested by the husband, this property would yield income interest to the wife of $8,000 per year. As far as the payment of the $150,000 judgment is concerned, no amortization schedule is part of the record but this is unnecessary since the amortization schedule is simply determined by a known and accepted mathematical formula. *See Hohlstein v. St. Louis Roofing Co.,* 328 Mo. 899, 42 S.W.2d 573, 576 (1931); *see also Brock v. American Central Life Ins. Co.,* 44 S.W.2d 200, 201–202 (Mo.App.1931).

The payments on interest and principal breakdown as follows for the first five years:

| YEAR | INTEREST | PRINCIPAL |
| --- | --- | --- |
| 1 | $13,436.55 | $1,563.45 |
| 2 | 13,289.88 | 1,710.12 |
| 3 | 13,129.50 | 1,870.50 |
| 4 | 12,954.01 | 2,045.99 |
| 5 | 12,762.07 | 2,447.87 |

Taking the first year as an example, and assuming the income producing property could be liquified at the husband's evalua-

**3.** The husband argues that the wife's income producing property amounted to $96,000, but this includes the $16,500 in cash surrender value of life insurance policies. We see no reason why the wife should be made to extinguish these policies when the trial court specifically suggested that she keep the policies in force. While the trial court's advice to her was not mandatory, we feel it was prudently given.

tion, without discount and invested at the husband's suggested rate of 10% return, the wife would receive:

| | | |
|---|---|---|
| $ 8,000.00 | — | return on investment |
| 13,436.55 | — | interest payment on loan |
| 18,000.00 | — | maintenance |
| $39,436.55 | | |

Although the federal tax tables are not part of the record, the trial court must have appreciated the tax impact on this income. *See Gershman Inv. Corp. v. Danforth,* 475 S.W.2d 36, 37 (Mo. banc 1971); *see also Hall v. Bucher,* 240 Mo.App. 1239, 227 S.W.2d 96, 98 (1950). The wife's federal taxes on this income for 1980 or 1981 would be approximately $11,600.00. This leaves the wife $27,836.55 net plus $1,563.45 payment on principal, or $29,400.00 spendable income for either of those years. With the wife's expenses estimated at $27,240.00 per year, the wife would be receiving approximately $2,160.00 per year, or $180.00 per month more than her estimated needs. Given the error built in the estimates and approximation needed to reach this figure and given the estimates and approximations needed to be made by the trial judge to equitably satisfy the needs of the wife, we find the trial judge well within normal error, if any indeed existed, in awarding the wife $1,500 per month maintenance.[4] If a great discrepancy in fact arises between the wife's needs and the maintenance provided, the discrepancy can be resolved by a motion to modify.

The husband contends his spendable income amounts to only $37,000 per year. Since the trial court's decree obligates him to pay the wife a total of $39,000 [5] per year, he reasons, the maintenance award must be eliminated or lowered. As noted, the husband operates two closely-held corporations: Pete's Market, Inc., and P & S Foods, Inc. and claims he must lend back to P & S Foods his entire net salary. In effect, the husband contends his spendable income is only the net amount of his salary, after taxes, from Pete's Market, Inc. He argues this amounts to $37,700 per year. However, the tax returns of P & S Foods do not support this contention. (See Schedule III). These tax returns show that while the husband averaged an annual salary of almost $55,000 from P & S Foods, his loans back to that corporation averaged only about $26,000. In fact, for the two years immediately prior to the divorce decree, the loans from the husband to P & S Foods were only $16,790 and $11,421. Accordingly, the record indicates the husband had a spendable income of $60,447 in 1979.[6] The husband claims expenses of $29,000 per year. When we add this figure to the $39,000 per year needed to fulfill the decree, we determine the husband needs $68,000 per year to fulfill his obligations. He is approximately $8,000 short. Although the trial court could have chosen to disbelieve the husband's statement of expenses or to discount the evidence of his spendable income, it could only

---

4. The husband argues that the wife's reasonable needs, as shown by her income and expense statement submitted at trial, were $1,810. The husband also contends the wife received $96,060 in income producing property. Invested at 10%, the husband reasons, this property will yield an income of $800 per month, or $9,600 per year. In addition, the husband contends it will take him 25.68 years to pay the wife's judgment of $150,000 at 9% interest amortized monthly, in installments of $1,250 per month and these payments will provide the wife with an interest income of $235,000 over the next 25.68 years or $763 per month. This, according to the husband, gives the wife $1,563 per month income. "At the same time," the husband argues, "the principal of $150,000 ..., will be accruing, and if, upon receipt, is invested in the most conservative markets, should easily produce the $247 difference between the

$1,810 requested by the [wife] for living expenses and the $1,563 income" provided by the investment of the income producing property plus the interest on the $150,000 judgment.

5. | | | |
|---|---|---|
| $ 1,500 | — | per month maintenance |
| 1,250 | — | per month payment of $150,000 judgment |
| 500 | — | per month child support |
| $ 3,250 | — | per month |
| x12 | — | months |
| $39,000 | — | per year |

6. We can assume the trial court chose 1979 as the base year since the husband's spendable income for 1977 and 1978 were considerably lower and the figures for 1980 are not complete (See Schedule III).

do so if an alternative finding which supports the decree is justifiable on the record. On the other hand, the court may have determined the husband's approximate net spendable income was sufficient after allowable deductions were taken for maintenance, child support and interest payments on the wife's judgment. This computation is not clearly shown by the record. We have carefully scrutinized the record and can find no explicit basis on which the lower court could have decided the husband had sufficient income to meet the terms of the decree. We remand this cause and direct the trial court to specifically find the husband's spendable income. In the event there is enough spendable income found, the court should re-enter its decree. If the court finds insufficient income, the decree should be modified accordingly.

SMITH, P.J., and PUDLOWSKI, J., concur.

## APPENDIX
### SCHEDULE I

| | | HUSBAND | | WIFE |
|---|---|---|---|---|
| I. NON–INCOME PRODUCING ASSETS | Boat I | $ 5,500 | Marital Home (Net) | $ 73,500 |
| | Boat II | 4,000 | Household Property | 80,000 |
| | Motorcycle | 1,200 | Jewelry | 15,000 |
| | | | 2 Cars | 10,000 |
| SUBTOTAL: | | $10,700 | | $178,500 |
| II. INCOME PRODUCING ASSETS | Business Property I (net) | (1,870) | Stock (Misc.) | 8,000 |
| | Business Property II | 21,375 | Silver Coins | 10,000 |
| | Bank Account | 3,750 | CD's | 54,800 |
| | | | Bank Account | 3,750 |
| | | | Promissory Notes | 3,000 |
| | | | Life Insurance | 16,500 |
| SUBTOTAL: | | $23,255 | | $96,050 |
| III. CLOSELY HELD BUSINESS | Corporate Stock | $300,000 | Judgment Against Husband | $150,000 |
| | Less Judgment to Wife | (150,000) | | |
| SUBTOTAL: | | $150,000 | | $150,000 |
| TOTAL: | | $183,955 | | $424,550 |

### SCHEDULE II

| | | HUSBAND | | WIFE |
|---|---|---|---|---|
| I. NON–INCOME PRODUCING ASSETS | Boat I | $ 5,500 | Marital Home (Net) | $ 73,500 |
| | Boat II | 4,000 | Household Property | 80,000 |
| | Motorcycle | 1,200 | Jewelry | 15,000 |
| | | | 2 Cars | 10,000 |
| SUBTOTAL: | | $10,700 | | $178,500 |
| II. INCOME PRODUCING ASSETS | Business Property I (net) | (1,870) | Stock (Misc.) | 8,000 |
| | Business Property II | 21,375 | Silver Coins | 10,000 |

## SCHEDULE II

| | HUSBAND | | | WIFE |
|---|---|---|---|---|
| Bank Account | 3,750 | CD's | | 54,800 |
| | | Bank Account | | 3,750 |
| | | Promissory Notes | . | 3,000 |
| | | Life Insurance | | 16,500 |
| SUBTOTAL: | $23,255 | | | $96,050 |

III. CLOSELY HELD BUSINESS

| | | | | |
|---|---|---|---|---|
| Corporate Stock | $400,000 | Judgment Against Husband | $150,000 |
| Less Judgment to Wife | (150,000) | | |
| SUBTOTAL: | $250,000 | | $150,000 |
| TOTAL: | $283,955 | | $424,550 |

## SCHEDULE III

SARANDOS — BALANCE SHEET AND INCOME ANALYSIS AS REFLECTED IN THE RECORD

| | 1976 | 1977 | 1978 | 1979 | 1980 |
|---|---|---|---|---|---|
| a) P & S Salary | * | $ 60,000 | $ 51,643 | $ 48,937 | $ 55,080 |
| b) Pete's Market Salary | * | 50,453 | 57,063 | 57,001 | 48,253 |
| c) Total Wages & Salary | $123,839 | $110,453 | $108,707 | $105,938 | $103,333 |
| d) Plus Other Income | — | — | — | — | — |
| e) Total Income (Adjusted Gross) | $142,788 | $111,000 | $130,831 | $119,943 | * |
| f) Less Tax Paid | −57,499 | −40,000 | −53,485 | −42,706 | * |
| g) Net Spendable Income | $ 85,289 | · $ 71,000 | $ 77,346 | $ 77,237 | * |
| h) Less Amount Lent Back to P & S Inc. | −19,596 | −40,045 | −40,857 | −16,790 | $ 11,421 |
| i) Adjusted Spendable Income After Loan to P & S Corporation | $ 65,693 | $ 30,955 | $ 36,489 | $ 60,447 | |