**Carl Paul PETERSEN, Petitioner/Appellant/Cross–Respondent,**

v.

**Virginia Elaine PETERSEN, Respondent/Respondent/Cross–Appellant.**

Nos. 27425, 27426.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 15, 2007.

Jeffrey W. Heil, Spencer, Scott & Dwyer, P.C., Joplin, MO, for petitioner/appellant/cross-respondent.

Duane A. Cooper, Evenson, Carlin & Cooper, L.L.C., Pineville, MO, for respondent/respondent/cross–appellant.

GARY W. LYNCH, Judge.

The marriage of Carl Petersen ("Carl")[1] and Virginia Elaine Petersen ("Elaine") was dissolved by judgment of the Circuit Court of Newton County, wherein Carl was ordered to pay Elaine maintenance. Alleging a reduction in his income, Carl filed a motion to modify the judgment on February 13, 2003, seeking to lower or eliminate his maintenance obligation. Following trial on December 22, 2004, the trial court entered a judgment reducing the maintenance amount. Both parties appeal this modification. Because we find no substantial evidence to support the amount of Carl's 2004 income as determined, found, and apparently relied upon by the trial court, we reverse and remand.

---

1. We use the parties' first names throughout this opinion for ease in reading and convenience. No disrespect is intended.

### (1) Factual and Procedural Background

The original dissolution judgment, filed June 1, 2001, required that Carl pay maintenance of $7,471 per month to Elaine. On February 13, 2003, Carl filed a Motion to Modify ("Motion") the amount of maintenance, alleging changed circumstances so substantial and continuing as to make the original maintenance amount unreasonable. His claimed changed circumstance was a reduction in his income by more than twenty-five percent.

Carl is, and was at the time of the original dissolution, the sole shareholder of Star–Brite Plating, Inc. ("Star–Brite"). Star–Brite performs metal finishing on other people's products. Star–Brite paid Carl compensation in varying amounts, depending upon its success in a given year. Carl's adjusted gross income, as reported for income tax purposes for the years 1999 and 2001 through 2003,[2] was:

    1999 - $533,871
    2001 - $254,383
    2002 - $306,972
    2003 - $ 81,076

Carl's testimony at trial explained that the 2002–2003 diminution in income was caused by a decline in Star–Brite's business. One of Star–Brite's major customers was a company named NTN, which provided parts for Ford Motor Company. In the latter months of 2002, NTN began decreasing its business with Star–Brite, and in March 2003, it terminated virtually its entire business relationship with Star–Brite. This was a severe blow to Star–Brite, as NTN represented about eighty percent of its business. Star–Brite was forced to fire four employees, and Carl personally filed for bankruptcy due to this business decline.

Trial on the Motion was held on December 22, 2004. At the close of all the evidence, the trial court observed:

> There's been a request for findings of facts and also for—a request for the Court to draft and adopt an opinion to include a statement of the grounds for its decision. So each party is allowed × days to file proposed findings of fact and grounds for decision, method of determining income circumstances and willful intent.

Although the actual written request for "findings of facts" was not included in the record on appeal, we glean from this statement that one party had made a specific request for factual findings as to the "method of determining income circumstances."

On March 25, 2005, the trial court filed its Findings of Fact and Conclusions of Law, which, among other findings, found: (1) Carl's "approximate gross income for 2204[sic] was $40,000"; (2) Carl testified "he had taken no formal salary for [2004], but had drawn approximately $40,000 out [of Star–Brite] as expenses which he utilized to pay his personal expenses"; (3) Carl "has no other income, other than from Star–Brite"; (4) Carl "continues to operate Star–Brite, however he does not have any immediate prospect for return to the income enjoyed during the marriage and following until NTN reduced and alter [sic] cancelled its contracts [sic] with Star–Brite"; and (5) Carl's "income has decreased more than twenty-five percent (25%)."

In its Conclusions of Law, the trial court, among other matters, concluded that: (1) Carl's "loss of income has been both substantial and continuing, such that

2. No evidence was presented to the trial court by either party concerning Carl's 2000 adjust-ed gross income.

the original order of support is unreasonable"; and (2) Carl "no longer has assets or income with which to provide maintenance per the original order of support."

Incorporating its March 25, 2005 Findings of Fact and Conclusions of Law, the trial court, on December 7, 2005, entered judgment reducing Carl's maintenance payment to $2,500 per month, as of February 13, 2003. Both parties appeal this judgment.

## (2) Standard of Review

■ A motion to modify maintenance will be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Winchester v. Winchester*, 163 S.W.3d 57, 59 (Mo.App. 2005). We will defer to the trial court on its decision to modify, even if the evidence could support a different conclusion. *Id.* "The evidence, including all reasonable inferences drawn therefrom, is viewed in the light most favorable to the judgment, and all evidence and inferences to the contrary are disregarded." *Clark v. Clark*, 101 S.W.3d 323, 329 (Mo.App.2003).

■ When the amount of the maintenance award, which is within the discretion of the trial court, is questioned on appeal, we review for an abuse of that discretion. *Corrier v. Corrier*, 112 S.W.3d 443, 446 (Mo.App.2003).

## (3) Discussion

### Carl's appeal—Appeal No. 27425

■ Carl appeals the judgment, claiming the trial court erred in ordering him to pay $2,500 per month in maintenance, because that amount plus his own basic living expenses exceeds his annual income as found by the trial court.

The trial court, in its findings of fact and conclusions of law, stated that Carl's "approximate gross income for [2004] was $40,000." It based this amount upon Carl's testimony that the gross sales at Star-Brite had so decreased that he took no formal salary and only drew out approximately $40,000 from the company in 2004 to pay his personal expenses.[3] Carl asserts that paying $30,000 of his $40,000 income in maintenance per year would leave him with only $10,000 a year to meet his own basic needs, and this amount is insufficient.

If there was substantial evidence in the record to support the trial court's finding that Carl's income is only $40,000, then there would be insufficient income from which Carl could meet the terms of the award, and the award, as an abuse of the trial court's discretion, would be erroneous. *See Sarandos v. Sarandos*, 643 S.W.2d 854, 858–59 (Mo.App.1982). However, we cannot reach this issue, because there is no substantial evidence in the record from which the trial court could have determined that Carl's income in 2004 was $40,000.

The trial court's $40,000–approximation of Carl's 2004 income derives from Carl's statements and evidence showing that this is the amount of money he withdrew from Star-Brite to pay for his personal expenses. Carl is, and was at all relevant times, the sole shareholder of Star-Brite. As such, it was and is his decision as to how much money he takes out of the company and pays to himself. Because Star-Brite is Carl's sole source of income, and

---

**3.** The trial court in its findings stated that Carl took out $40,000 from Star-Brite in 2004, presumably based upon Carl's admitted exhibit listing it as such. However, the testimony of Carl and his bankruptcy petition indicate he took $4,000 per month from Star-Brite in 2004, giving him an approximate draw of $48,000 for the year.

such income is a factor of both Carl's discretion as sole shareholder and the financial status of Star–Brite, it is impossible to get a true picture of Carl's income for 2004, or his income potential, without information about Star–Brite's financial status during that year.[4] While evidence was presented that Star–Brite lost an important customer in 2003, there was also testimony from Carl that he was in the process of rebuilding Star–Brite's customer base and business and that, as of trial in the waning days of 2004, Star–Brite had recovered to its pre-NTN level. However, other than Star–Brite's 2002 and 2003 federal and Missouri income tax returns, no evidence was presented, and the trial court made no findings, on the financial status of Star–Brite in 2004. Information on Star–Brite's "earnings, its capital, its assets and liabilities and its future prospects are all material to a determination of a fair award of ... maintenance[.]" *Jenkins v. Jenkins,* 396 S.W.2d 268, 272 (Mo.App.1965). Without any information as to Star–Brite's financial condition for 2004, as of the date of trial, there was no substantial evidence in the record to support the trial court's finding that Carl's income in 2004 was approximately $40,000. Therefore, the judgment of modification reducing Carl's maintenance to $2,500 per month, premised upon this unsupported finding as to Carl's current income for 2004, is not supported by substantial evidence and, as such, is erroneous and must be reversed.

### Elaine's appeal—Appeal No. 27426

Elaine appeals the judgment, claiming that no evidence supported the existence of a substantial and continuing change of circumstances at the time Carl filed his Motion to Modify, and, therefore, the trial court's judgment was an erroneous application of the law.

Her argument is essentially that on February 13, 2003, when Carl filed his Motion, NTN had not yet terminated its business relationship with Star–Brite, and Carl's income had actually risen since the marriage dissolution. She claims this because in 2001, the year the original dissolution judgment was entered, Carl's adjusted income was $254,383. It then increased to $306,972 in 2002, and Carl's testimony revealed that he made most of his 2003 income of $81,076 during the first quarter, in which he filed the Motion. Elaine claims that this evidence does not support a change in circumstances due to a decrease in income, as the Motion alleged, but rather, shows that Carl's income had actually increased between the time of the original judgment and the filing of the Motion. Therefore, the Motion should have been denied.

The flaw in Elaine's argument is that it assumes, among other things, that the trial court based the maintenance award in the original judgment entered on June 1, 2001, on Carl's adjusted gross income for 2001, as reported on this federal income tax return. However, in his response to this point, Carl points out that the information before the trial court at the original dissolution hearing, held on March 29, 2001, was not his 2001 income but, rather, his 1999 income of $533,871. This is because at that time, Carl's 2001 income was unknown, and his 2000 adjusted gross income was also unknown because he had not yet filed his 2000 tax return. Therefore, Carl argues that the original award was based upon his 1999 income. The flaw with

---

4. For example, if in a given year Star–Brite has profits of $500,000, and Carl only took $40,000 out of the company, it would not be accurate to say that Carl has insufficient funds to pay $30,000 a year in maintenance, because, as the sole shareholder of Star–Brite, he could take more money out of the company.

Carl's response is that it is not supported by any evidence in the record as to exactly what evidence was before the trial court in making the original maintenance determination. He just assumes that the 1999 tax return was admitted into evidence and that there was no evidence as to Carl's 2000 or 2001 income before the trial court. While the former assumption may be likely, the latter is fairly dubious. However, neither assumption rises above the level of speculation.

The evidence in the record regarding the original dissolution proceeding consists of a copy of the original judgment, Carl's testimony that his 1999 adjusted gross income was $533,871, and Carl's reference in his testimony to the original judgment for maintenance being made at a time "when I was making 350,000 a year." The original judgment does not specify whether the maintenance award is based upon Carl's 1999 income, 2000 income, or projected 2001 income. Carl's 1999 income is almost a year-and-a-half removed from the trial on the petition and the entry of the original judgment. The only evidence left as to Carl's income at the time of the original judgment is his testimony that it was at a time "when [he] was making 350,000 a year." We must view the evidence and all reasonable inferences therefrom in the light most favorable to the judgment. *Clark*, 101 S.W.3d at 329. Therefore, we find that the trial court could have concluded that Carl's income at the time of the original judgment was $350,000 per year.

Carl's uncontroverted testimony was that Star–Brite began experiencing a decline in NTN's business in the latter half of 2002, culminating in the termination of their contract in March 2003. This testimony supports the trial court's conclusion that a *substantial* change in circumstances had occurred between the entry of the original judgment, when Carl was earning income at the rate of $350,000 per year, and the filing of the Motion on February 13, 2003, when Carl was only earning income at the rate of $81,000 per year. Elaine's point as raised in her appeal is denied.

■ However, because of our holding in Carl's appeal, we must address the trial court's conclusion that Carl's "loss of income has been both substantial *and continuing*, such that the original order of support is *unreasonable*[.]" (Emphasis added). Maintenance "may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." § 452.370.1, RSMo 2000; *Winchester*, 163 S.W.3d at 60. Such a change must be proven by detailed evidence. *Winchester*, 163 S.W.3d at 60; *Laffey v. Laffey*, 72 S.W.3d 143, 147 (Mo.App.2002). Further, "the court, in determining whether or not a substantial change in circumstances has occurred, shall consider all financial resources of both parties[.]" § 452.370.1, RSMo 2000. To the extent that the trial court relied upon its unsupported finding that Carl's 2004 income was approximately $40,000 in concluding that the change in circumstances was continuing or that the amount of maintenance in the original judgment was unreasonable, such conclusions were not supported by substantial evidence. Without any substantial evidence as to Carl's current 2004 income as of the time of trial, serious doubts exist as to whether the trial court's conclusion of changed circumstances, as related to the continuing and unreasonable elements, is supported by detailed evidence or takes into consideration all of Carl's financial resources, as required. The trial court should address and resolve these doubts on remand.

### (4) Decision

We reverse the trial court's judgment modifying the amount of maintenance Carl is required to pay Elaine. The case is remanded for the trial court to make, if possible, based upon the existing record, findings of fact and conclusions of law and enter a new judgment, all in accordance with this opinion. If such action is not possible, the trial court should hold an evidentiary hearing to receive such additional evidence as it deems appropriate in order to make any required findings of fact and conclusions of law, and shall enter a new judgment not inconsistent with this opinion.

GARRISON, J., and BARNEY, J., concur.